[Civ. No. 28726.   Second Dist., Div. One.   May 3, 1965.]

EMIL DeLORETO et al., Plaintiffs and Appellants, v. GOLETA COUNTY WATER DISTRICT et al., Defendants and Respondents.

James M. DeLoreto for Plaintiffs and Appellants.

Price, Postel & Parma, Robert M. Jones and Lilian M. Fish for Defendants and Respondents.

WOOD, P. J.—Pursuant to section 32200 of the Water Code, Emil and Elizabeth M. DeLoreto petitioned respondent board of directors to exclude their land from respondent water district. After a hearing, the board denied the petition. Mr. and Mrs. DeLoreto then petitioned the superior court for a writ of mandate compelling exclusion of their land from the district. The court entered a judgment denying the petition. The petitioners appeal from the judgment.

Appellants contend that the evidence before the board does not support the board's finding that the land will be substantially and directly benefited by its continued inclusion in the district.

Petitioners' land, consisting of 9 acres, has been located within respondent district since the district was organized in 1944 under the County Water District Law. (Wat. Code, §§ 30000-33901.) One of the purposes for organizing the district was to enable participation in the "Cachuma project," a project proposed by the United States Bureau of Reclamation to increase the water supply in the Santa Barbara area. (Section 31020 et seq. of the Water Code prescribe the purposes of a county water district.) On April 10, 1952, the district, after having been authorized to do so at a public election, entered into a contract with the United States which provided for the construction of a distribution system connecting land within the district to the Cachuma project at a cost of $3,600,000, to be repaid by the district (by assessments on the land within the district) over a period of 40 years.

The system, which includes several branch mains, one of which has an outlet to petitioners' land, was completed, and petitioners' land received service from the district through the system from August 1, 1954, to September 30, 1959. At that time there were two houses and a lemon orchard on the land. On December 24, 1958, upon the request of petitioners (to obtain sewer service to the land), the land was annexed to the City of Santa Barbara; and, since September 30, 1959, the land has been used for residential and commercial purposes

and has received its water service from the city. (A portion of the land has received water service from the city since 1934 for domestic purposes.)

On July 10, 1962, petitioners filed a petition with the board for exclusion of their land from the district, and a hearing was held on August 30, 1962. A transcript of the proceedings at the hearing before the board was received in evidence in this mandamus action.

At the hearing before the board, Mr. James DeLoreto, an attorney at law and the son of petitioners, appeared on behalf of petitioners. As such representative, he stated in substance that the land was a lemon orchard when the Cachuma project was commenced and the district was organized; the petitioners welcomed the service of the district and used its water to advantage in their orchard; water service to the two houses for domestic purposes has been furnished by the City of Santa Barbara since 1934; the petition was filed to avoid assessments on the land by the district; the city has the same source of supply as the district has (namely, the Cachuma project); the city also has the Gibraltar Reservoir as a source of supply; the present supply of city water is sufficient to meet the needs of the land; the land will not be used for agricultural purposes in the future; the land is not zoned for a car wash, large laundry, or anything that could require a great deal of water; and for these reasons there is no substantial or direct benefit to the land by remaining in the district.

At the hearing before the board, the engineer for the water district stated in substance that he is a registered civil engineer in California; the district has a distribution system which includes mains leading to petitioners' land; the system is to be paid for in 40 annual instalments; the district provided service to petitioners' land for five years from 1954 to 1959; such service is still avaiable; it was his (engineer's) opinion that the land would be benefited by remaining in the district and that exclusion thereof would not be in the best interests of the district; the source of supply of water for the district and for the city was the Cachuma project; the city and the district also have wells, and the district will have other wells in the future; the city and the district have equal rights to Cachuma water under the master contract; the water supply to the district is not the same as the supply to the city, because the supply goes through different distribution systems, and the land will be benefited by remaining in the district because it will have two sources of water supply.

Several owners of land within the district (including land which at the time of the hearing was being used for commercial and industrial purposes) appeared at the hearing. The owners stated in substance that they opposed the petition; the district was organized to participate in the Cachuma project; at that time the "ground levels had decreased in the area" and "we were getting into a precarious condition for adequate water supply"; the district entered into a contract with the United States for construction of a distribution system costing "around three million dollars," to be repaid by assessments on the land in the district over a 40-year period; no payments have as yet been made on the contract; petitioners participated in the organization of the district and used the water from the system; several landowners "close to the boundary" of the City of Santa Barbara thereafter petitioned to be annexed to the city so as to obtain sewer service; when annexed they also received city water service; and to permit these owners to exclude their land from the district would increase the assessments on the remaining land in the district.

Counsel for the district, without objection, presented a file of documents referred to as the "Validation Suit," and the file was made a part of the record of the proceedings. Said counsel stated that his office, at the request of the district, had filed a suit in the superior court in 1952 to validate the contract between the district and the United States relating to the Cachuma project; the file is a true copy of the file in the office of the clerk of the superior court in said suit; and the file included, among other things, the complaint, notices, all procedural requirements, a copy of the contract, and a judgment finding the contract valid and that all land within the district was directly and substantially benefited by being included within the district.

At the hearing before the board, a motion was made, seconded, and unanimously carried, that the petition (filed with the board) be denied. Thereafter, the board made a resolution in writing. Paragraph 3 of the resolution states as follows: "That based on all of the evidence presented to it at the hearing on August 30th, 1962, it is the determination and finding of this Board that: (a) The land sought to be excluded will be substantially and directly benefited by its continued inclusion in the District. (b) The exclusion of said land would not be for the best interests of this District."

The superior court found, among other things, that each of the aforementioned findings by the board was supported

by substantial evidence in light of the whole record at the hearing. The court also found that the evidence presented by petitioners at the hearing before the board was not sufficient to support petitioners' contention that their land should be excluded from the district.

Appellants (petitioners) contend that the evidence before the board does not support the board's finding that the land will be substantially and directly benefited by its continued inclusion in the district. They argue that they sustained their burden of proof on this issue; that a second supply of water from the same source is not a substantial and direct benefit to the land; and that the said finding of the board is contrary to all of the evidence presented at the hearing.

The County Water District Law is in sections 30000 to 33901, inclusive, of the Water Code. Section 32200 provides for the filing of an exclusion petition with the board of directors of the district. Section 32220 provides for a hearing of the petition. Section 32221 provides that any landowner or taxpayer within the district may appear at the hearing to urge or oppose the granting of the petition. Section 32222 provides: ''The board after the hearing of any exclusion petition shall order the exclusion of all or any part of the land described in it when as to the land to be excluded either: (a) The board determines that the land will not be substantially and directly benefited by its continued inclusion in the district. (b) The board determines the exclusion to be for the best interests of the district.''

The above-cited sections of the Water Code were discussed in *Atchison etc. Ry. Co.* v. *Kings County Water Dist.*, 47 Cal. 2d 140 [302 P.2d 1]. In that case the railroad owned a right-of-way, 16½ miles long and 100 feet wide, which ran through the district. The railroad petitioned the district board for exclusion of the land from the district because the land would not be substantially and directly benefited by its continued inclusion in the district. The board denied the petition. The trial court found that the evidence showed as a matter of law that the right-of-way was permanently devoted to uses other than agricultural uses and would receive neither a substantial or direct benefit by its continued inclusion in the district. On appeal, in reversing the judgment, it was said (p. 145): ''But it is not the present, immediate use of the land which is the criterion for exclusion under the statute. The determining factor is whether any substantial and direct benefit accrues to the land itself, as distinguished from the particular use

which a landowner may choose to make of the land. The record shows ... that the district engages in studies and research as to the water needs of lands therein and possible future sources of supply. ... These functions of the district, acting on behalf of all landowners in the district, are of substantial and direct benefit to all land similarly situated within the district.

"The protection, conservation and replenishment of the underground water supplies is one of the main functions of the water district in question. (Wat. Code, § 31082.). ... A county water district has other functions and powers than the furnishing of water to any particular land. The controlling statute expressly so distinguishes a county water district in providing that no land therein situated shall be released from 'any of the burdens, obligations or liabilities' of such district 'because of its inclusion within an irrigation district.' (Wat. Code, § 30092.) Thus, the fact that Sante Fe ... is not presently devoting the land to agricultural uses is immaterial insofar as concerns its obligations as a landowner in the county water district, whose authorized functions, activities, and operations are 'substantially and directly' benefiting Santa Fe's land in protecting the underground rights of the entire district. ...

"Presumably all land which was included in the district overlays the underground water supplies to be conserved, and can have access to and can use such supplies; and all activities of the district in conserving those supplies will substantially and directly benefit all land so situated."

In the present case petitioners' evidence (consisting of statements by their attorney) was to the effect that the land is now being used for residential and commercial purposes, and will no longer be used for agricultural purposes; the city and the district have the same source of supply of water; the city has a sufficient supply of water to meet the present needs of the land; the land is not presently zoned for any activity that will require "a great deal of water"; and the purpose of the petition is to avoid assessments by the district on the land.

In opposition to the petition there was evidence to the effect that the district maintained a distribution system leading to, and capable of serving, petitioners' land; said land has been within the district since the district was organized, and received water through the system for a five-year period before being annexed (at petitioners' request) to the city; prior to

the construction of the system the underground water levels were decreasing; the district now has wells and is engaged in producing new wells (apparently the increased surface water provided through the system is operating so as to replenish the underground water supply); the $3,600,000 cost of the distribution system must be repaid (by assessments on the land) over a period of 40 years, and no such payments have been made. The exclusion of the land from the district admittedly was sought for the purpose of avoiding the obligations of the district to repay through assessments on the land.

In opposition to the petition there were also expert opinions by the district engineer to the effect that continued inclusion of the land in the district would substantially and directly benefit the land and that a second water supply constituted such a benefit; and that although the second supply of water (i.e., the district's supply) had, except for existing and prospective wells, the same source of supply as the city had, it was not the same supply, because the water supply came through different distribution systems. The land would have access to another system should one of the systems fail to deliver water. In time of water shortage, the land presumably could draw its allowed quota of water from the district's system as well as from the city's system.

■ As was said in the *Atchison* case, *supra* (p. 145): "The determining factor is whether any substantial and direct benefit accrues to the land itself, as distinguished from the particular use which a landowner may choose to make of the land." ■ In light of the whole record before the board, the evidence supports the board's finding that the land will be substantially and directly benefited by its continued inclusion in the district.

*Walters* v. *Pine Cove County Water Dist.*, 177 Cal.App.2d 498 [2 Cal.Rptr. 253], cited by appellants as "the most recent case on appeal involving Section 32222 of the Water Code," is distinguishable from the present case. In the *Walters* case, the evidence before the board in support of the petition for exclusion was as follows (p. 499): "At the hearing plaintiff Walters and plaintiffs' engineer testified that the land had an available sufficient water supply and that it would receive no benefit from being in the district. There was some evidence received in opposition to the application, but in that evidence, aside from mere matters of opinion, there was nothing substantial to the contrary." In that case the trial court ruled that the matter should be remanded to the board for further

hearing. On appeal, it was held that the matter should be remanded in accordance with the appellate court's opinion, wherein it was said (p. 500) : "A careful review of the evidence which was introduced before the board does demonstrate that there was no sufficient evidence to justify the unqualified refusal to exclude, but on the other hand, there was some indication that there might exist some facts which would constitute a benefit to the property were proper evidence thereof produced." In the present case, sufficient evidence was presented to show facts constituting a benefit to the land. The petitioners herein did not present testimony of an engineer or other expert, and the court found that the evidence presented by the petitioners was not sufficient to support their contention that the land should be excluded.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied June 30, 1965.